**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**YADIA POSADA**

v. 2:25-cv-634-NPM

**COMMISSIONER OF SOCIAL SECURITY**

---

## OPINION AND ORDER

Plaintiff Yadia Posada seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings. (Doc. 11). Posada filed an opening brief and the Commissioner responded. (Docs. 15, 16). Posada fails to show any reversible error, so the Commissioner's decision is affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[1] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

**B. Factual and procedural history**

On May 17, 2021, Posada applied for disability insurance benefits and supplemental security income. (Tr. 240–241, 356–362, 363–369). She asserted an onset date of February 1, 2017, alleging disability due to the following: bipolar disorder, mania, post-traumatic stress disorder (PTSD), peripheral neuropathy, rheumatoid arthritis, anxiety, attention-deficit hyperactivity disorder (ADHD), restless leg syndrome, asthma, diabetes, and carpal tunnel syndrome. (Tr. 240, 356, 395). As of the alleged onset date, Posada was 46 years old and had an eleventh-grade education. (Tr. 242, 391, 396). She previously worked as a retail clerk,

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[3] *See* 20 C.F.R. §§ 404.1511(a), 416.911(a).

customer service data entry clerk, sales associate, and child-care provider. (Tr. 396).

On behalf of the administration, a state agency[4] initially reviewed and denied Posada's applications on March 17, 2022, and, upon reconsideration, on February 21, 2024. (Tr. 295–299, 310–316). At her request, Administrative Law Judge (ALJ) Raymond Rogers held a hearing during which Posada was represented by counsel. (Tr. 194–217). On September 14, 2024, the ALJ issued a decision finding Posada not disabled. (Tr. 10–29). The administration's Appeals Council denied her request for review. (Tr. 1–6). She then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 404.1613(a), 416.903(a), 416.1013.

*Atha v. Comm'r*, 616 F. App'x 931, 933 (11th Cir. 2015);[5] *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r*, 906 F.3d 1353, 1364 (11th Cir. 2018). "Because Social Security hearings basically are inquisitorial in nature, it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears before the ALJ to oppose the claim for benefits." *Id.* "Thus, the ALJ has a basic duty to develop a full and fair record." *Id.*

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.303 ("Entitled" means that a person has applied and has proven his or her right to benefits for a period of time.); 404.1512 (the claimant must prove disability), 416.912 (same); *see also Moore v. Barnhart*, 405 F.3d 1208,

[5] Unless otherwise noted, we accept all alterations and omit all citations, footnotes, and internal quotation marks when quoting judicial decisions.

1211 (11th Cir. 2005) (the regulations "place a very heavy burden on the claimant"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359.

At step one of the evaluation, the ALJ found Posada had not engaged in substantial gainful activity since February 1, 2017, the alleged onset date. (Tr. 13). At step two, the ALJ characterized her severe impairments as: "type I diabetes mellitus, mild right carpal tunnel syndrome, polyneuropathy, status post distal radius fracture of the right upper extremity, asthma, headaches, post-traumatic stress disorder (PTSD), bipolar disorder, anxiety, and depression." *Id.* At step three, the ALJ determined Posada did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. *Id.*

As a predicate to step four, the ALJ arrived at the following RFC:

> Claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but no climbing, ladders, or scaffolds; frequent balancing, stooping, kneeling and crouching; no crawling; frequent handling and fingering; **must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and pulmonary irritants such as fumes, odors, dust, and gases;** work environments of moderate noise as defined by SCO noise code 3; **no exposure to hazardous machinery or unprotected heights; able to understand, remember, carry out simple instructions; able to use judgment to make simple work-related decisions; able to adapt to occasional changes in routine work setting;**

> **no work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; occasional interaction with coworkers and supervisors; and no interaction with the public**. (Tr. 17) (emphasis added).

The ALJ found Posada had no past relevant work.[6] (Tr. 27). At step five, the ALJ found she could perform other work that exists in significant numbers in the national economy. *Id.* In support, a vocational expert (VE) testified that an individual of her age, education, work experience, and RFC could perform the following representative occupations:

- *Router*, DOT #222.587-038, light, SVP 2, with 51,000 jobs;
- *Marker*, DOT #209.587-034, light, SVP 2, with 271,000 jobs;
- *Order Caller*, DOT #209.667-014, light, SVP 2, with 51,000 jobs.[7]

---

[6] Past relevant work is substantial gainful activity done within the past five years and long enough for the claimant to learn its demands. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Substantial gainful activity is work activity involving significant physical or mental duties usually done for pay or profit, whether or not pay or profit is realized. *See* 20 C.F.R. §§ 404.1510, 404.1572, 416.910, 416.972.

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled. The expert's job numbers were for the national economy.

(Tr. 28). Thus, for purposes of the Act, the ALJ concluded Posada was not disabled from February 1, 2017, the alleged onset date, through September 14, 2024, the date of the decision. *Id.*

## II. Analysis

Posada presents seven issues on appeal:[8]

1) whether there was a de facto reopening of the administration's denial of Posada's prior claim, such that the ALJ should have incorporated the entire record underlying the prior decision;

2) whether the ALJ's RFC failed to account for Posada's moderate limitation in adapting or managing herself;

3) whether the ALJ's RFC finding that Posada can only have occasional changes in a workplace setting precludes her from working in reasoning-level-two jobs;

4) whether the ALJ's RFC finding that Posada cannot work in jobs requiring the use of foot controls precludes all light work;

5) whether the ALJ's RFC finding that Posada can only have occasional interaction with supervisors and coworkers precludes the representational occupation of order caller;

6) whether the ALJ's RFC finding that Posada can only have occasional interaction with supervisors and coworkers precludes all work because training periods may require more than occasional interaction; and

[8] The Social Security scheduling order expressly provides that "each question presented must be stated in a concise and neutral heading." (Doc. 6 at 4). Plaintiff counsel has repeatedly failed to comply with this directive by combining multiple issues into a single question presented, resulting in lengthy, paragraph-long statements rather than the concise headings the scheduling order requires. This practice is contrary to the plain language of the court's order and frustrates its purpose. As plaintiff counsel is aware, this district has a substantial caseload, and the court should not have to expend judicial resources reviewing briefs for compliance with requirements that counsel are obligated to follow in the first instance. In the future, briefs that fail to comply with the court's directives may be stricken, and the offending party will be required to file a corrected brief that conforms to the applicable requirements.

7) whether the VE's testimony about job numbers supplies substantial evidence for the ALJ's step-five conclusion.

**A. Standard of review**

We "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Comm'r*, 997 F.3d 1127, 1132 (11th Cir. 2021). Instead, our review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004).

Substantial evidence is a more-than-a-mere-scintilla standard. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 108. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. *See* 42 U.S.C. § 405(g). This means we must affirm, even if we would have reached a contrary result as finder of fact, and even if we find that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r*, 963 F.3d 1317, 1323 (11th Cir. 2020).

**B. There was no de facto reopening of Posada's prior application.**

Posada argues that the ALJ *de facto* reopened her prior 2018 application

because the prior and current applications implicated overlapping time periods. And from there, Posada asserts that the ALJ failed to develop a full and fair record because he did not associate the 2018 application with the present file. (Doc. 15 at 22–24). This argument lacks merit.

A *de facto* reopening occurs when a previous administrative decision is "reconsidered on the merits to any extent and at any administrative level." *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985). In other words, a final decision by the Commissioner will be deemed reopened only if the ALJ fails to apply res judicata and "bases an ultimate determination on a review of the record in the prior application." *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). Thus, to find a *de facto* reopening, there must be an "actual reexamination of the merits of a prior administrative decision." *Id.* at 1078.

No such reexamination of the prior record occurred here. The ALJ stated:

> It should be noted that the remote alleged onset date of February 1, 2017, invades a prior adjudicated period as the undersigned found the claimant to not be disabled on September 11, 2020 (Exhibit B1A). However, res judicata does not apply secondary to regulation changes regarding past relevant work. (Tr. 10).

Given the intervening change in the applicable regulations—that is, a change in the lookback period for determining past relevant work—the previous determination remained final. To be sure, an ALJ may dismiss a hearing request based on res judicata only when there has been a previous determination or decision

"with respect to the rights of the same party on the same facts and on the same issue or issues." 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1); *see also Torres v. Comm'r*, 819 F. App'x 886, 888 (11th Cir. 2020). When the underlying rules or legal standards change, a subsequent application presents a new legal issue, which breaks the identity-of-issues requirement. And since a change in law or policy is an exception to res judicata, the ALJ "must apply the new regulations … and issue a decision on the merits of the case." POMS DI 27516.001: HALLEX I-2-4-40, Section B, Note 2. Therefore, the ALJ's decision did not affect the finality of the previous ALJ's decision concerning Posada's 2018 application, and no *de facto* reopening occurred, nor was the ALJ required to incorporate or review the previous record.

**C. Posada has not demonstrated that the ALJ's RFC failed to account for her moderate limitation in adapting and managing herself.**

At step two of the sequential analysis, an ALJ rates the severity of a claimant's mental impairment by evaluating its impact across four domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(4); SSR 96-8p, 1996 SSR LEXIS 5, *10, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ assesses the limiting effects using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). An "extreme" limitation in a particular domain means the claimant

cannot function in that area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part 4, Section 12.00(F)(2).

Because a moderate limitation is, by definition, not a serious one, it may not limit an individual's ability to perform work-related functions. If that is the case, the ALJ need only explain as much at step four. *See Winschel v. Comm'r*, 631 F.3d 1176, 1181 (11th Cir. 2011); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). As the ALJ acknowledged below, the RFC evaluation "requires a more detailed assessment." (Tr. 16). Otherwise, the ALJ must account for the moderate mental-function limitation when formulating the RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations.").

Here, the ALJ found that Posada had a moderate limitation in adapting and managing herself. (Tr. 15). "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." POMS DI 34001.032(E)(4). Examples that illustrate the nature of this area of mental functioning include responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans independently

of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *See id.* Correspondingly, the ALJ crafted an RFC limiting Posada to not only simple decisions and occasional changes in a routine work setting, but also to no specific production-rate work and a near-solitary work environment. In addition, the ALJ noted that Posada could not be exposed to hazardous machinery or unprotected heights, as well as no concentrated exposure to extreme temperatures, humidity, vibration, or pulmonary irritants. (Tr. 17). All told, this demonstrates that the ALJ provided an RFC that reduces Posada's need to adapt, take precautions, respond to change, regulate emotions, or satisfy demanding standards for grooming or attire.

Nevertheless, Posada contends that none of the limitations in the RFC are related to adapting and managing herself. Rather, she maintains that the ALJ attributed the limitations to the other three domains of mental functioning concerning understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Doc. 15 at 16). But these functional limits that arise from each domain overlap, and so do the associated workplace limitations. As such, the RFC corresponds with the moderate limitation in the adapt-and-manage domain. *See Patterson v. Comm'r*, No. 23-13317, 2025 WL 2364749, *3 (11th Cir. Aug. 14, 2025) (a limitation of "no more than simple routine repetitive tasks with a reasoning level that does not exceed 2"

implicitly accounted for claimant's moderate limitation of adapting or managing himself by minimizing the amount of change and reducing the demands that could negatively impact emotions or well-being). Therefore, the ALJ did not err.

**D. Limiting Posada to occasional changes in a workplace setting did not preclude reasoning-level-2 jobs.**

Posada suggests that the VE's testimony cannot constitute substantial evidence because it stands at odds with the RFC. Specifically, the representative occupations opined by the VE are "reasoning-level-2" jobs, which involve solving problems with more than occasional variables, while the RFC limits her to only occasional changes in the work setting. (Doc. 15 at 10–11).

But Posada is comparing apples and oranges. Pertinent here, reasoning level 1 requires the ability to apply commonsense understanding to carry out simple one- or two-step instructions, and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job. U.S. Dep't of Lab., DOT, App C, 1991 WL 688702. Reasoning level 2, on the other hand, requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, and to deal with problems involving a few concrete variables in or from standardized situations. *Id.* The reasoning levels set out in the DOT are part of the Scale of General Education Development (GED) that "embraces those aspects of education (formal and informal) which are required of the work for

satisfactory job performance."[9] *Id.* In this context, the claimant's ability to handle variables refers to the complexity of the tasks, rather than changes in the work setting. *Stiffler v. O'Malley*, 102 F.4th 1102, 1109 (9th Cir. 2024) ("The capacity to deal with problems involving a few concrete variables in or from standardized situations, … identified in Reasoning Level 2, refers to the situational variables that may arise when performing an assigned task.").

In essence, Posada conflates the ability—obtained through education—to reason through increasingly complex problems with the ability to adjust to a specific number (or frequency) of changes in the work setting. Generally, "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). The workplace environment or setting would include, for example, the location or physical surroundings of the area where the worker's duties are performed. "Changes to the workplace setting itself, such as requiring workers to work in a different area of the workplace each day or to travel to different locations for each shift, are distinct from situational variables in the tasks being performed." *Stiffler*, *102 F.4th at 1110*.

In light of this distinction, any difference between "occasional changes in the

---

[9] The GED is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. In other words, it refers to the kinds of thinking skills that an occupation generally requires. The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). DOT, App C, 1991 WL 688702.

routine work setting" and "a few concrete variables" in the work to be performed did not result in an apparent conflict for the ALJ to resolve between the VE's testimony and the DOT, as this is a reference to the complexity of the daily tasks, not a reference to how often the overall work setting might change. *See Ricky F. v. O'Malley*, No. 1:23-cv-720, 2024 WL 4333136, *10 (M.D.N.C. Sep. 27, 2024) (finding no apparent conflict between the VE's testimony that plaintiff could perform jobs with a Reasoning Level of 2 and the ALJ's limitation to jobs involving only occasional changes in the workplace setting); *see also Kelly P. v. Saul*, No. 5:18CV00777, 2019 WL 3573591, *5 (C.D. Cal. Aug. 6, 2019) (same). So the ALJ did not err, and remand is not warranted.

**E. The RFC's no-foot-controls limitation did not preclude Posada from all light work.**

Posada asserts that the RFC and hypothetical question posed to the VE limited her to pushing and pulling occasionally with the right lower extremity. (Doc. 15 at 7). On this basis, she argues that she cannot engage in any light work because it requires the ability to apply a negligible amount of force for at least two-thirds of the workday. But Posada misreads both the ALJ's decision and the hearing transcript as the RFC did not incorporate this limit. Rather, the ALJ found Posada suffered from a severe impairment of neuropathy, and as a result, the RFC excluded the use of foot controls. (Tr. 17).

"An inability to operate foot controls does not preclude a finding that a

claimant can otherwise perform light work." *Hultgren v. Comm'r*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547, *9 (M.D. Fla. Feb. 9, 2022). Relatively few light jobs are performed in a seated position, but when a light job involves sitting most of the time, it usually involves some pushing and pulling of arm-hand or leg-foot controls at greater exertion levels (weight) than sedentary work. SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251, *5 (1983). Nevertheless, not all light jobs require the ability to operate foot controls, nor has Posada cited any authority stating as much. (*See* Doc. 15).

As is common, the ALJ's RFC assessment provides for a reduced range of light work. So light work without foot controls fits within the RFC. And as the VE testified, such jobs exist (i.e., Router, Marker, and Order Caller) even when considering Posada's limitation of no operation of foot controls. (Tr. 211–212). Indeed, Posada makes no attempt to show that any of the representative occupations require the use of foot controls.[10] (*See* Doc. 15). At bottom, Posada has failed to demonstrate that any conflict exists between the RFC and the jobs identified by the VE.

[10] Significantly, the Dictionary of Occupational Titles does not indicate that any of the representative jobs highlighted by the VE require the use of foot controls. *See* https://occupationalinfo.org/22/222587038.html;https://occupationalinfo.org/20/209587034.html; https://occupationalinfo.org/20/209667014.html.

**F. The ALJ's reliance upon the representative occupation of "Order Caller" was harmless.**

Posada also challenges the ALJ's reliance upon the occupation of "Order Caller" because it requires reading items to coworkers and otherwise frequent talking and hearing, which conflicts with the RFC assessment that she is limited to occasional interaction with coworkers and supervisors and no interaction with the public. (Doc. 15 at 6). And reading *Viverette v. Comm'r*, 13 F.4th 1309, 1318 (11th Cir. 2021), as mandating remand because the ALJ did not find that the number of jobs remained sufficient without this occupation, Posada argues that remand is warranted. *Id*. at 7.

Posada may correctly highlight an unresolved conflict with the RFC. But we are not convinced that *Viverette* demands such a rigid approach.[11] *See Farias v. Bisignano*, No. 24-CV-61193-VALLE, 2025 WL 2718761, *11 (S.D. Fla. Sept. 24, 2025). Rather, we are "persuaded … by district courts considering a similar

[11] We are aware of other cases within this district that have been remanded for such a determination pursuant to *Viverette*, but we do not find them persuasive. *See, e.g.*, *Cisneros v. Comm'r*, No. 2:20-cv-873-JLB-MRM, WL 354717, *3-4 (M.D. Fla. Feb. 7, 2022) (available jobs dropped approximately 53% from 288,000 to 133,000 due to unresolved apparent conflict); *Connell v. Comm'r*, No. 6:22-cv-739-DNF, 2023 WL 3774581, *4-5 (M.D. Fla. June 2, 2023) (drop of 20% from 90,000 to 72,000); *Horning v. Comm'r,* No. 8:22-cv-1817-DNF, 2023 WL 5369625, *5 (M.D. Fla. Aug. 22, 2023) (drop from 182,000 to 164,000, approximately 10%); *Cannon v. Kijakazi*, No. 8:21-cv-2589-CPT, 2023 WL 2706735, *4-7 (M.D. Fla. Mar. 30, 2023) (drop from 244,000 to 231,000, approximately 5.5%); *but see Rodriguez v. Comm'r*, No. 8:21-cv-3002-DNF, 2022 WL 4364506, *5 (M.D. Fla. Sept. 21, 2022) (after eliminating two jobs, the court found that 220,000 or 64 percent of the remaining jobs in the national economy constituted a significant number, and error that occurred was harmless).

argument, that the Eleventh Circuit has left the door open for federal courts to evaluate whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless, where the number of positions under consideration, after excluding the error-tainted job, are remarkably higher than the relatively low number of positions in *Viverette*." *Id.* (quoting *Hurst v. O'Malley*, No. 23-00137-N, 2024 WL 4342792, *12 (S.D. Ala. Sept. 27, 2024)).

On that score, we find that unlike *Viverette*—which had only 21,000 or 20 percent of the initial job pool remaining after the conflicting job was removed—there were 322,000 jobs or over 86 percent of the initial job pool that remained available in the national economy for Posada to perform.[12] Indeed, Posada did not challenge the VE's testimony or the ALJ's finding that the remaining Router occupation had approximately 51,000 jobs in the national economy and the Marker occupation had about 271,000 jobs, totaling 322,000 available jobs.[13] (Tr. 213–215). And the Eleventh Circuit has found that far fewer jobs constituted "substantial evidence to support the ALJ's finding on step five." *Valdez v. Comm'r*, 808 F. App'x 1005, 1010 (11th Cir. 2020); *see also Atha*, 616 F. App'x at 935 (affirming ALJ's finding that 23,800 jobs in the national economy was a "significant number"

[12] Notably, the *Viverette* court signaled that it was reluctant to rule on whether the "significant number" of jobs requirement was satisfied as a matter of law when there was a "relatively low number" of jobs remaining. *Viverette*, 13 F.4th at 1319 n.3. But here, there were over 300,000 jobs remaining after excluding the Order Caller occupation.

[13] *See infra* discussion in Section H.

satisfying step five); *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987) (concluding that 80,000 jobs in national economy constituted a significant number of jobs).

Furthermore, we find that despite the ALJ not explicitly observing that each job constituted employment in significant numbers in the national economy, the ALJ's use of the phrase "representative occupations such as" prior to the findings, combined with the specific parsing of each job and its numbers available in the national economy (Tr. 28), shows the ALJ relied on the jobs either singularly or in combination. *Daniels v. Dudek*, No. 8:23-CV-2903-JRK, 2025 WL 814846, *4 (M.D. Fla. Mar. 14, 2025); *see also Charriez v. Comm'r*, No. 6:23-CV-1972-RMN, 2024 WL 5323731, *5 (M.D. Fla. Nov. 21, 2024) ("Viverette-type errors require remand unless the decision contains factual findings about the proffered job categories both singly and in combination.").

In sum, the ALJ's reliance on the order caller occupation was harmless because the step-five determination that Posada "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" remains supported by substantial evidence since 322,000 jobs remained available. (Tr. 28). Remanding this case to the ALJ to confirm that 322,000 jobs is a significant number of available jobs in the national economy "would be a useless formality when substantial evidence already supports the ALJ's conclusion." *Denmark v. Kijakazi*, No. 8:20-cv-2852-AEP, 2022 WL 831903, *8 (M.D. Fla. Mar. 21, 2022);

*see also Bacon v. Comm'r*, 861 F. App'x 315, 320 (11th Cir. 2021) (even if the VE's testimony that plaintiff could perform work as a mail clerk was apparently inconsistent with his RFC, the inconsistency would have been harmless because the ALJ's finding that plaintiff was capable of performing jobs that existed in significant numbers in the national economy was supported by the substantial evidence); *Valdez*, 808 F. App'x at 1009 ("[A]ny error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience.").

### G. The RFC's limitation to occasional interaction did not preclude Posada from engaging in all work.

During the hearing, the VE was questioned about whether the jobs she listed—Router, Marker, and Order Caller—would or could require more than occasional interaction with coworkers and supervisors during an initial training period. (Tr. 214). The VE responded, "[t]hat would depend on the work. I wouldn't be able to say for *all* of them, yes." *Id.* (emphasis added).

From this, Posada asserts that the ALJ's step-five conclusion—that Posada could perform other work—is not supported by substantial evidence because her RFC precludes more than occasional interaction with her coworkers and

supervisors.[14] (Doc. 15 at 11–14). This argument is unpersuasive.

To begin with, Posada misconstrues the VE's testimony. The VE never testified that a router, marker, or order caller had initial training periods that required more than occasional interaction with coworkers and supervisors. (Tr. 211–215). To the contrary, when asked whether the 373,000 jobs she identified could require more than occasional interaction with coworkers or supervisors during the training period, the VE testified that she could not say that "for all of them." (Tr. 214). She further confirmed that it would depend on the work. *Id.* So the VE's testimony provided substantial evidence. *See Lee v. O'Malley*, No. CV-323-052, 2024 WL 710894, *6 (S.D. Ga. Feb. 21, 2024) (The VE's general testimony about probationary periods and interaction requirements for some unskilled jobs did not preclude the ALJ from relying on the specific jobs identified for the plaintiff, as the VE did not testify those particular jobs required more than occasional interaction during any probationary period). And despite her counsel being allowed to further question the VE, Posada failed to elicit any meaningful concessions from the VE regarding this issue. (Tr. 215). Therefore, without further questioning, there was no indication whether a

---

[14] In making this argument, Posada relies upon *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020) and *Mosher v. Saul*, No. 5:18-cv-109-EMT, 2019 WL 3779995 (N.D. Fla. Aug. 12, 2019), neither of which is binding or persuasive. Furthermore, each case is distinguishable from the instant matter. In *Sczepanski*, the ALJ found the claimant would miss one day of work per month, and the VE testified that "[d]uring the probationary period of 90 to 120 days there is typically no tolerance for absence." *Sczepanski*, 946 F.3d at 155. In *Mosher*, the VE testified that a claimant who had to miss one day of work per month would not be able to complete a probationary period for entry-level positions. *Mosher*, 2019 WL 3779995, at *6.

substantial or less than substantial number of these jobs might require more than occasional interaction during the training period.

Moreover, there is no indication in the DOT descriptions for these jobs that anything more than occasional interaction would be required during any training period, and Posada makes no attempt to point to any in her briefing.[15] At bottom, the RFC's limitation to occasional interaction did not preclude Posada from all work, and she has not met her burden to show that she is unable to perform the work identified by the Commissioner. *See Washington*, 906 F.3d at 1359 (once the Commissioner demonstrates that there are jobs in the national economy that the claimant can perform, the burden switches back to that claimant to prove inability to perform identified jobs).

**H. The VE's testimony supplied substantial evidence for the ALJ's step-five conclusion.**

In her final issue on appeal, Posada—through the same attorney who represented her at the hearing—challenges the reliability of the VE's testimony concerning DOT-specific job numbers and argues that the VE identified two allegedly obsolete occupations, router and marker, that no longer exist in today's economy.[16] So, as Posada further contends, remand is necessary because the VE's

---

[15] As we observed earlier in the decision, the "training period" can include things like prior experience or education. *See supra* note 7.

.

[16] The regulations still include the DOT as an acceptable source for job data evidence.

testimony did not provide substantial evidence to support the ALJ's decision. (Doc. 15 at 18–22).

This argument falters from the start because Posada failed to raise these issues at the hearing before the ALJ. (Tr. 213–-215). Consequently, Posada forfeited any arguments about the reliability of the job numbers. *See Valdez*, 808 F. App'x at 1010 (11th Cir. 2020) (finding the court was "foreclosed from considering the data in the occupational employment statistics on appeal" because the claimant failed to "present the occupational employment statistics before the ALJ or object to the vocational expert's testimony" at the hearing); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (finding the claimant forfeited his claim concerning VE testimony because he "did not even obliquely suggest that the VE's job estimates might be unreliable at any point during administrative proceedings").

The VE testified about specific job numbers for each occupation by its DOT code and that she utilized data sources cited by SkillTRAN, Occupational Employees Surveys, projections, and training data to obtain the job numbers.

---

*See* 20 C.F.R. §§ 404.1566(d), 416.966(d)(1). "Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools." *Goode v. Comm'r*, 966 F.3d 1277, 1281 (11th Cir. 2020); *see also Perez v. Comm'r*, No. 24-10770, 2024 WL 5245256, *3 n.3 (11th Cir. Dec. 30, 2024) ("Although it has been more than 25 years since the DOT was last updated, ALJs must continue to rely on the DOT while the Social Security Administration continues to develop its new system."); *Hall v. Comm'r*, No. 3:23-cv-1141-DNF, 2024 WL 3385452, *5 (M.D. Fla. July 12, 2024) (declining to remand on the ground that the job of a marker is obsolete; explaining that "the [relevant] regulations still include the DOT as an acceptable source for job data evidence and the vocational expert's testimony complied with the regulations.").

(Tr. 212, 214). The VE also noted that she did not modify the numbers in SkillTRAN. (Tr. 214). But rather than confront the VE at the hearing with any purportedly contrary information about job numbers, Posada presents that information for the first time here.

Even so, the question for us—for this issue and all other attacks on the VE testimony—is not whether substantial evidence supports the VE testimony, but whether the VE testimony supplies substantial evidence upon which the ALJ may base his decision. *Pace v. Comm'r*, 760 F. App'x 779, 781 (11th Cir. 2019). Given that Posada did not elicit any meaningful concessions at the hearing, nor did Posada offer anything in rebuttal, the VE testimony was more than a scintilla that a reasonable person might accept to support the conclusion that a sufficient amount of work corresponded with Posada's vocational profile.[17] *See Biestek*, 587 U.S. at 105.

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was no error or

---

[17] A vocational expert's testimony may fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology is internally inconsistent and incomplete such that it lacks a "baseline of reliability." *Goode*, 966 F.3d at 1285. However, the Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r*, 451 F. Appx. 838, 839 (11th Cir. 2012). Rather, "a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required." *See Leonard v. Comm'r*, 409 F. App'x 298, 301 (11th Cir. 2011). So, a vocational expert's testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 587 U.S. at 105.

no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on October 21, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge